UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:16-CR-024 JD |
| | ) | 3:17-CV-813 JD |
| RICHARD MAXIE | ) | |

**OPINION AND ORDER**

The indictment in this case charged Defendant Richard Maxie with one count each of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), possessing a firearm in furtherance of a drug trafficking crime, in violation of § 924(c), and possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). [DE 1] Maxie pled guilty with the benefit of a plea agreement to possessing a firearm in furtherance of a drug trafficking crime (Count 2). [DE 15-1] The Court accepted Maxie's plea of guilty, accepted his plea agreement, and found him guilty on June 8, 2016. [DE 21] On October 12, 2016, the Court sentenced him to 60 months of imprisonment, to be followed by two years of supervised release. [DE 34] Counts 1 and 3 were dismissed.

Now proceeding *pro se*, Maxie has filed a motion under 28 U.S.C. § 2255, attacking both his conviction and sentence. After instructing the government to respond and after reviewing the instant motion, the government's response, and Maxie's reply, the Court will dismiss his claims and deny the issuance of a certificate of appealability.

**FACTUAL BACKGROUND**

On February 18, 2016, police pulled over a vehicle driven by Maxie because they had a warrant for his passenger. After detaining his passenger, police questioned Maxie about what appeared to be fresh bullet holes in his vehicle. A K-9 unit arrived at the scene and the K-9 officer walked by Maxie's vehicle (without his dog) and smelled raw marijuana emanating from the open driver window. According to the police reports, the K-9 officer then retrieved his police dog. The dog conducted an open-air sniff around Maxie's vehicle and alerted on the front passenger door, indicating the presence of drugs within. The K-9 officer then secured the police dog and the officers searched Maxie's vehicle without letting the dog inside. Maxie, however, disputes the utilization of the drug-sniffing dog. He insists that the K-9 officer held a green tennis ball to the dog's nose before tossing it into the vehicle through an open window, that the dog then jumped in after the ball, and that the K-9 officer told the other officers that the dog had alerted on drugs. Essentially, Maxie claims the police manipulated the dog's positive alert on his vehicle.

The search of Maxie's vehicle yielded approximately 84 grams of marijuana—much of it packaged into individual baggies—a digital scale, and a loaded 9mm handgun that had been reported stolen. Police also recovered several hundred dollars in cash from both the vehicle and Maxie's person, as well as a Western Union receipt for $700.00. Maxie admitted to investigators that the gun was his and that he used it for protection while dealing marijuana.

The government charged Maxie with the offenses listed above, and Attorney Peter Boyles was assigned to represent him. Boyles met with Maxie on seven separate occasions before Maxie signed a plea agreement. [Affidavit of Peter Boyles ¶¶ 2, 5, 9-10, 13-15] During those meetings, Boyles and Maxie discussed the charges and possible sentences, reviewed

discovery against Maxie's version of events, discussed multiple plea offers from the government (including the offer Maxie eventually signed), and discussed the viability of a motion to suppress evidence obtained from the traffic stop. *See generally id.* Regarding the motion to suppress, Boyles advised Maxie that any such motion would likely fail due to a lack of evidence supporting Maxie's account and because the traffic stop and subsequent search (as reported by the officers) did not violate the law. *Id.* ¶ 13.[1]

Maxie pled guilty to Count 2 of the indictment. At the change of plea hearing, Maxie stated under oath that he read the plea agreement, discussed it with Boyles, and understood its contents. [DE 46 at 12:25-13:8] He also stated that Boyles had explained the plea agreement's appeal waiver to him, and that he understood its meaning. *Id.* at 14:2-21. At sentencing, the presentence report's description of relevant conduct did not include Maxie's version of the search, yet he never indicated to Boyles that he disagreed with its characterization and never objected to its contents. The Court imposed the mandatory minimum sentence of 60 months' imprisonment and Maxie's § 2255 petition followed.

## STANDARD OF REVIEW

Section 2255(a) of Title 28 provides that a federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [and] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a

---

[1] Maxie does not dispute any of the representations in Boyles's affidavit.

fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (citation omitted). Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). A court may also deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## DISCUSSION

The thrust of Maxie's § 2255 petition is that Boyles provided him with ineffective assistance of counsel by failing to file a motion to suppress the evidence recovered from the search, despite Maxie's numerous requests.[2] He argues that such a motion would have prevailed because the police improperly kept him at the scene of the traffic stop after detaining his passenger and the allegedly fraudulent dog alert did not provide the officers with probable cause to search his vehicle. Maxie contends that Boyles's failure to file the motion to suppress infected his decision to plead guilty.

---

[2] Maxie's sworn petition also includes several undeveloped claims, such as the assertion that Boyles "pressur[ed] him into believing a guilty plea was his only option" and "induc[ed] [him] to accept the tendered plea agreement without first filing a Motion to Suppress …." [DE 37 at 5, 7] He also argues in his supporting brief that Boyles failed to investigate the search and failed to explain the plea agreement, the consequences of pleading guilty, and the possible sentences Maxie faced. [DE 44 at 10-11, 25] Whether unsworn or undeveloped, none of these shotgun claims can survive because Maxie provides no facts in their support. *See Hurlow v. United States*, 726 F.3d 958, 967 (7th Cir. 2013) (noting that a petitioner cannot circumvent an appeal and collateral-attack waiver by making "broad, unsupported assertions of ineffective assistance"); *see also Gray-Bey v. United States*, 156 F.3d 733, 739 (7th Cir. 1998) ("[A] section 2255 petition must be accompanied by 'a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions.'") (quoting *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996)).

To prevail on a claim of ineffective assistance, a defendant must first show that his attorney performed deficiently—that the representation was incompetent and "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). "In the plea bargaining context, reasonably competent counsel will 'attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty.'" *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016) (quoting *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003)).

Second, a defendant must show that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "To show prejudice in the plea bargaining context, a defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Gaylord*, 829 F.3d at 506 (quoting *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)). "In other words, a defendant must demonstrate a reasonable probability that 'the outcome of the plea process would have been different with competent advice.'" *Id*. (quoting *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012)). Critically, when a defendant's claim is based on counsel's failure to file a motion to suppress, a defendant must also "prove the motion was meritorious." *Cieslowski*, 410 F.3d at 360; *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017).

1. **Failure to File a Motion to Suppress**

Maxie has not shown that Boyles provided ineffective assistance of counsel by not filing a motion to suppress. Boyles investigated the incident by requesting and receiving photographs of Maxie's vehicle as well as a dash-cam video recording from one of the police vehicles at the scene. After reviewing the dash-cam video and the photographs he obtained, however, Boyles

5

could find no evidence to corroborate Maxie's story that the officers improperly detained him for questioning and induced the dog to alert on his vehicle with a tennis ball. According to Boyles, the photographs revealed nothing of substance and the video recording only showed the area facing away from the traffic stop. [Boyles Aff. ¶ 8][3]

      *a. The police did not improperly question Maxie.*

Maxie first argues that the officers improperly subjected him to questioning after executing the warrant for his passenger. But based on what Boyles knew from his review of the police reports (and in the absence of any evidence to the contrary), he determined that the officers conducted the traffic stop and initial questioning of Maxie within the boundaries of the Constitution. [Boyles Aff. ¶ 13] Here, the police stopped Maxie's vehicle because of a warrant for his passenger. Once the officers secured Maxie's passenger, they conducted a routine check on his identity and his status with the Bureau of Motor Vehicles. [DE 48-1 at 12] This did not unreasonably prolong the traffic stop. *United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005) ("[A]s part of the stop, police may ask the vehicle's occupants 'a moderate number of questions' and request their identification.") (quoting *Berkemer v. McCarthy*, 468 U.S. 420, 439 (1984)).

---

[3] Maxie presents no sworn statements that challenge whether Boyles adequately conducted this investigation. For example, despite claiming in his affidavit that Boyles advised against seeking additional discovery, Maxie candidly admits that Boyles nonetheless promised to "work on getting [the requested discovery] from the U.S. Attorney's Office or the police department." [DE 44-1 at 3] Indeed, Boyles made good on that promise here, and Maxie's sworn affidavit does not contradict Boyles's word. Furthermore, Maxie insists that a review of the dash-cam recording would corroborate his version of the dog alert [DE 53 at 4], but Boyles specifically requested dash-cam footage from law enforcement, reviewed it, and saw nothing of the sort. Maxie does not allege any additional footage exists that Boyles did not review; he is simply unsatisfied that the dash-cam did not show what he hoped it would. And apart from this theory, Maxie provides no indication as to *what else* Boyles would have uncovered from an investigation, so he cannot demonstrate *how* Boyles's alleged shortcomings impacted the outcome of his case. This is especially true here, where the police obtained probable cause to search his vehicle even *without* the police dog's alert. Because of this, Maxie cannot demonstrate the requisite prejudice under *Strickland*. *See Long*, 847 F.3d at 922 (affirming district court's decision to deny an evidentiary hearing where petitioner did not specify what defense counsel would have uncovered had counsel properly investigated petitioner's case).

While this routine check was being carried out, officers noticed what appeared to be fresh bullet holes in Maxie's vehicle, and they began asking him questions about whether those marks were related to a shots-fired call from two days earlier and only one block away from the traffic stop. This questioning was not improper. *See id.* ("Furthermore, the police may ask questions that do not concern the purpose of the stop and that are not supported by any other suspicion.") (citing *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002)). A K-9 unit arrived on the scene, and the officers then asked Maxie to step out of the vehicle and continue talking with them. *See United States v. Tinnie*, 629 F.3d 749, 751 (7th Cir. 2011) ("During a valid traffic stop, an officer may order the driver and passengers out of the vehicle without violating the Fourth Amendment.") (citations omitted). The officers' conduct at this stage complied with constitutional requirements.

        b. *The police obtained probable cause to search Maxie's vehicle.*

Next, Maxie argues that the officers did not have probable cause to search his car. However, while the other officers questioned Maxie about the shots-fired call, the K-9 officer walked by Maxie's vehicle—without his police dog—and "smell[ed] a faint odor commonly associated with raw marijuana coming from the open driver's window." *Id.* at 14. The scent of marijuana emanating from Maxie's car provided the police with probable cause to search it; they did not need a positive alert from the police dog to justify a search. *United States v. Wimbush*, 337 F.3d 947, 950-51 (7th Cir. 2003); *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008) ("A police officer who smells marijuana coming from a car has probable cause to search that car."). Nonetheless, the K-9 officer then asked Maxie if the vehicle contained any narcotics, to which Maxie hesitated before answering "no." [DE 48-1 at 14] Only then did the K-9 officer retrieve his police dog. *Id.* Based on his review of the government's discovery and the facts

7

contained in the police reports, Boyles reasonably determined that any motion to suppress would have been denied. Whether the police dog conducted an open-air sniff as opposed to chasing a tennis ball into Maxie's car is irrelevant for establishing probable cause because the K-9 officer himself smelled marijuana even before retrieving the dog from his police cruiser.

      *c. Boyles's decision not to file a motion to suppress was not deficient.*

Moreover, given the lack of any evidence to rebut the officers' accounts, any motion to suppress filed by Boyles would have had to rely solely on Maxie's version of events, which itself would be of little value since Maxie never disputed or called into question the K-9 officer's report that he smelled marijuana coming from the open car window.[4] The officers' reports consistently and unambiguously describe the above course of events. *See Montagueo v. United States*, 41 F. App'x 899, 900 (7th Cir. 2002) (finding that defense counsel did not provide ineffective assistance by failing to file a motion to suppress, because officers' "consistent testimony to a reasonable version of events would have rendered any motion to suppress based only on [claimant's] contrary account at best a long shot to succeed. Montagueo's counsel's failure to make a motion that was likely to fail cannot be deemed unreasonable behavior so deficient as to deprive Montagueo of counsel."). Therefore, the motion to suppress that Maxie requested from Boyles would have likely been denied. Maxie lost nothing at all from his counsel's failure to file what would have likely been a meritless motion to suppress, so he is entitled to no relief in this respect.

**2. Contents of the Plea Agreement**

To a lesser degree, Maxie claims that he received ineffective assistance of counsel because he was not informed of the "broad range of constitutional and statutory rights he would

---

[4] Nor does Maxie dispute that report at this stage.

8

be forfeiting," including the waiver of appeal. [DE 44 at 30, 32, 34] To establish *Strickland*'s prejudice element for this type of claim, Maxie would have to prove that (1) because of his attorney's ineffective assistance, he misunderstood the consequences of his plea agreement, and (2) he would not have pled guilty absent that misunderstanding. *See Thompson v. United States*, 732 F.3d 826 (7th Cir. 2013) (holding that the defendant could not establish prejudice where the record showed he properly understood the consequences of his plea); *Berkey v. United States*, 318 F.3d 768 (7th Cir. 2003) (rejecting an ineffective assistance claim where, despite the defendant's arguments to the contrary, his statements at the change of plea hearing confirmed that he understood the sentencing process and his potential sentences, and that no promises were made to induce his plea).

Here, the record indicates that Maxie cannot satisfy his burden to show prejudice. Specifically, he confirmed at the change of plea hearing that he had discussed the case in general and the plea agreement in particular with Boyles, that he believed he had told Boyles everything Boyles needed to know in order to represent him, and that he was satisfied with Boyles's representation. [DE 46 at 4:19-5:7] Maxie also stated that he understood a conviction on Count 2 (to which he was pleading) carried a mandatory minimum sentence of five years and that he could be sentenced to life in prison. *Id.* at 10:16-11:8. He acknowledged that he had discussed the Guidelines with Boyles, that he read the plea agreement, discussed it with his attorney, understood it, and signed it. *Id*. at 11:9-13:10. As to the contents of Maxie's plea, the Magistrate particularly explained the appeal waiver to him, and Maxie stated that Boyles explained the waiver and that he understood all of its ramifications. *Id.* at 13:18-14:21. Maxie agreed on the record that if he took his case to trial, the government could prove its case against him and that he was pleading guilty because he believed it was in his best interest. *Id.* at 15:23-16:18. On top

9

of this, Maxie stated in his plea agreement that he believed Boyles had "done all that anyone could do to counsel and assist [him]," and that he understood the proceedings against him. [DE 15-1 ¶ 11]

Maxie's statements under oath at the change of plea hearing confirm that he understood the consequences of his plea agreement. Those statements are presumed to be truthful. *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). Thus, Maxie cannot show that he was prejudiced by any ineffective assistance, so his claim fails. *See Missouri v. Frye*, 566 U.S. 134, 142 (2012) ("Before a guilty plea is entered the defendant's understanding of the plea and its consequences can be established on the record. This affords the State substantial protection against later claims that the plea was the result of inadequate advice."); *Thompson*, 732 F.3d at 830 ("[The defendant] cannot show that [his attorney's] alleged failure to clarify the sentencing consequences of pleading guilty to conspiracy was a 'decisive factor' in his decision to forgo trial because the district court's explanation of the sentencing process at [the defendant's] plea colloquy removed any possible prejudice of [the attorney's] advice."); *Berkey*, 318 F.3d at 773.

Without explanation and only in passing, Maxie now claims that his "limited education as well as cognitive skills" negated his mental capacity to understand the plea agreement [DE 44 at 32; DE 53 at 15]. He has not satisfied the standard for relief. Neither Maxie, nor anyone else, ever raised any concern that Maxie lacked the capacity to understand the pleadings. Nor does the Pretrial Bond Report nor the Presentence Investigation Report, comprised in part by information provided by Maxie, reference any cognitive deficiency. At the change of plea hearing, Maxie confirmed that he can read, write, and understand the English language, that he had no difficulty communicating with Boyles, and that he had taken no substances prior to the hearing that would alter his ability to understand the proceedings. [DE 46 at 3:25-4:12] Based on Maxie's

statements under oath, and absent any information suggesting otherwise, the Court found him competent. *Id.* at 4:13-18. He cannot now claim that he lacked the capacity to understand the plea or the proceedings. *See Gray v. United States*, No. 03 C 2942, 2004 WL 2921858, at **3-4 (N.D. Ill. Dec. 13, 2004) (rejecting petitioner's § 2255 claim that he lacked the mental capacity at the time he pled guilty where, at the change of plea hearing, he testified that he understood the nature of the proceedings and neither he nor his attorney ever indicated that he did not understand the nature of the charges and the consequences of his plea); *see also Hugi v. United States*, 164 F.3d 378, 381-82 (7th Cir. 1999) ("Courts take the plea process seriously and hold defendants to their representations. … A guilty plea is not a road-show tryout before the 'real' contest occurs in the § 2255 proceedings."). For all these reasons, Maxie's claim that he did not understand the consequences of his plea agreement will be dismissed.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). Here, for the reasons just discussed, the Court does not find that Maxie has made a substantial showing of the denial of any

constitutional rights, or that any issues in this motion are adequate to deserve encouragement to proceed further. The Court therefore denies the issuance of a certificate of appealability.

The Court advises Maxie that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises Maxie that any notice of appeal of this judgment must be filed within 60 days after the judgment is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) (stating that "the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision").

## CONCLUSION

For all the reasons contained herein, the Court **DENIES** Maxie's motion for relief under § 2255 [DE 37] and **DENIES** the issuance of a certificate of appealability. Lastly, the Court **DENIES** Maxie's request for an evidentiary hearing. [DE 44 at 34, 38] The district court in which a prisoner files his § 2255 petition "is required to hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ….'" *Sawyer v. United States*, 874 F.3d 276, 278 (7th Cir. 2017) (quoting 28 U.S.C. § 2255(b)). As discussed above, Maxie is entitled to no relief here, and therefore no evidentiary hearing need be held. The Clerk is hereby directed to enter judgment accordingly.

SO ORDERED.

ENTERED: November 15, 2018

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court